32344. FLEMING v. THE STATE.

HALL, Justice.

This is the direct appeal of the conviction and death sentence of Son H. Fleming, who was convicted of the murder of Police Chief James Giddens of Ray City, Berrien County.

The state presented evidence from which the jury was entitled to find the following:

Appellant borrowed a red and white Ford car from a friend on February 11, 1976. Around 10 or 10:30 p.m. that day a grocery store in Adel (Cook County) was robbed by two black males identified as Larry Fleming (appellant's nephew) and Henry Willis. One robber was armed with a nickel-plated .22 caliber gun. The stolen money was stuffed in a paper sack, and a carton of Kool cigarettes was also stolen.

The red and white Ford (apparently occupied by two black males) passed through Ray City shortly after the robbery, and aroused the suspicion of Chief Giddens, who had heard of the robbery over his radio. Chief Giddens pursued the car, and reported a description (including the

license plate number) of it by radio. Minutes later Giddens' police car was found abandoned by a friend with whom he had been talking prior to the pursuit. Giddens' disappearance was reported, and at 12:30 a.m. the red and white car was stopped; its three black male occupants (appellant, his nephew, and Willis) were arrested. Giddens' .357 magnum pistol, a nickel-plated .22 revolver, a brown sack of money, and a carton of Kool cigarettes were found in the car.

Giddens' body was found in a pond in Lanier County. He had been shot several times. Powder burns and the patterns of ratshot from the .22 pistol indicated that some of the wounds were made at a range of less than 18 inches. One bullet recovered from the body was fired from Giddens' gun.

After his arrest appellant made a number of statements. He initially stated that his nephew and Willis had borrowed the car from him before the robbery, and that he did not see them again until they picked him up shortly before the arrest.

His next statement indicated that he had been picked up after the robbery, but before the pursuit by Chief Giddens. He stated that the three of them were stopped by Giddens, and when the policeman attempted to search the car he was overpowered and abducted by the other two. Appellant claimed that he was forced to drive the car while his nephew and Willis held Giddens at gunpoint. After Giddens told them of his report of the license number of the car, they drove to a remote area and let him out. When Giddens ran in an attempt to escape, both Larry Fleming and Willis shot at him. Giddens fell wounded into the nearby lake; Larry Fleming and Willis followed him there. Appellant heard additional shots. This statement also indicated that appellant begged the other two not to kill Giddens, and that he acted only out of fear of them.

The testimony of a fellow inmate at the Cook County Jail indicated that appellant admitted driving the car while the others robbed the store, and that it was appellant who first shot at Giddens as he ran. At all times appellant has denied having shot Giddens as he stood helpless in the water. Appellant denied making this last

statement to the fellow inmate.

Appellant's only evidence in defense was his own testimony, in which he returned to his first story. In the sentencing phase his counsel presented no additional evidence of mitigating circumstances, relying on the evidence at the guilt phase. Appellant's personal history sheet shows no convictions for serious or violent crimes, and a long history of employment (more than twenty years) in various jobs. He was 46 at the time of the murder.

1. Appellant was arrested on the morning after the murder, February 12, 1976, and tried beginning on January 24, 1977. The delay was caused in part by the infrequency of the terms of court in Lanier County, which are held only twice a year, in January and September. Another factor in the delay was a request for a continuance by defense counsel. No demand for trial was made.

Appellant asserts that the delay alone entitled him to a discharge for denial of a speedy trial. This is not the law. Barker v. Wingo, 407 U. S. 514, 523 (1972); *Bryant v. State,* 236 Ga. 495 (224 SE2d 369) (1972). Although we have not previously said so, we have used the same standards for deciding claims of denial of a speedy trial, whether the claim is based on the Sixth Amendment to the United States Constitution, or Sec. I, Par. XI of the Constitution of the State of Georgia (Code Ann. § 2-111). See *Hughes v. State,* 228 Ga. 593 (187 SE2d 135) (1972). In deciding whether there has been a denial of the right to a speedy trial several factors must be considered, including the length of the delay, the reason for the delay, any actual prejudice to the defendant, and whether or not the defendant asserted the right. *Bryant v. State,* 236 Ga. at 495.

Because appellant asserts that delay alone is enough, we have no assertions of prejudice (other than that incident to being incarcerated before trial). Appellant never asserted the right other than by a motion for discharge. The time period was not extreme, and appellant is at least partly responsible for the delay. The trial court correctly denied the motion for discharge. See *Bryant v. State,* 236 Ga. at 496.

2. The evidence established that although Giddens' wounds were mortal, the immediate cause of death was drowning. Appellant requested a charge to the effect that the jury should acquit appellant if the cause of death was drowning rather than the gunshot wounds alleged in the indictment. The trial court correctly refused this charge. The evidence established that the wounds were the proximate cause of the death. See *Ward v. State,* 238 Ga. 367, 369 (233 SE2d 175) (1977).

3. Appellant objected to one sentence of the charge and recharge on conspiracy. Reading the charge as a whole, the jury was properly instructed on this issue.

4. No charge on the necessity that a verdict be unanimous was requested, and none was given. Appellant complains of this for the first time on appeal. If there was any doubt as to the unanimity of the verdict, the jury could have been (but was not) polled. Absent a request for a charge on unanimity, and absent a request that the jury be polled, we will not reverse a conviction for failure to give such a charge unless it appears that the jury was in fact mislead into believing that a less than unanimous verdict would be lawful. See *Blake v. State,* 239 Ga. 292, 298 (236 SE2d 637) (1977); *Porter v. State,* 141 Ga. App. 602 (234 SE2d 100) (1977). There is no indication that the jury was mislead in this case.

5. There was sufficient evidence to sustain the verdict, thus under the "any evidence" test we cannot reverse on the so called "general ground." *Cunningham v. State,* 235 Ga. 126 (218 SE2d 854) (1975). Appellant's argument that the evidence raised a reasonable doubt as to his guilt could properly be considered only by the trial court. See *Mills v. State,* 188 Ga. 616 (4 SE2d 453) (1939).

## Death Sentence Review

Appellant's remaining enumerations of error are considered as part of our mandatory death sentence review. Code Ann. § 27-2537.

The jury found two statutory aggravating circumstances: "(1) The offense of murder was committed against Police Chief James Edward Giddens, a peace officer, while he was engaged in the performance of his duties. (2) The offense of murder was committed while the

Defendant was engaged in the commission of another capital felony, to wit: kidnapping of and bodily injury to James Edward Giddens, a human being."

6. In *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975), we held that it was reversible error for the prosecutor to mention to the jury in his arguments during the death penalty phase, that any sentence of death would be reviewed by the trial judge and this court, and that the sentence could be set aside. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence by making predictions of the consequences of the jury's verdict.

In this case the prosecutor made such a statement to the jury. Defense counsel objected, and the trial court ruled: "All right, that would not be proper and I'd instruct the Jury to disregard that." This is not an adequate curative instruction. In *Coker v. State,* 234 Ga. 555, 570 (216 SE2d 782) (1975), revd. in part, 433 U. S. — (97 SC 2861, 53 LE2d 982) (1977), the court gave more extensive, and far clearer instructions to the jury. We held that those instructions were adequate; we are not prepared to hold that the minimal instructions in this case are enough, since this type of remark has an unusual potential for corrupting the death sentencing process. *Prevatte v. State,* 233 Ga. at 931. The jury is given the heavy burden of making the decision of whether the defendant will live or die. Comments about appellate safeguards on the death penalty suggest to the jury that they can pass the responsibility for the death sentence on to this court.

If the jury is exposed to such comments, the trial court should explain to the jury that it is the responsibility of each juror to decide whether the defendant will be executed, and that they cannot pass that responsibility on to anyone else. They should be told to decide on the penalty as if there was no possibility of any review of the sentence.

7. Reading the charge to the jury in the sentencing phase as a whole, we agree with appellant that the court failed to make clear to the jury that they could recommend a life sentence even if they found the existence of a statutory aggravating circumstance. Our system for deciding whether a death sentence is to be given requires

the jury to consider two issues in the sentencing phase. First, the jury must consider if the state has proven the existence of at least one statutory aggravating circumstance (Code Ann. § 27-2534.1 (b) (1—10)), beyond a reasonable doubt. Second, if one of these circumstances is found, the jury must then consider the mitigating and aggravating circumstances relevant to the defendant and determine whether the death penalty is appropriate in this case.

*Judgment affirmed as to the conviction, vacated as to the sentence, and a new trial is ordered on the question of punishment. All the Justices concur, except Bowles, J., who concurs in the judgment, but dissents as to Division 6, and Jordan, J., who dissents.*

ARGUED JUNE 13, 1977 — DECIDED NOVEMBER 8, 1977.

*Benjamin Zeesman, Edward Parrish,* for appellant.
*Vickers Neugent, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.