## 34055. WILLIS v. THE STATE.

UNDERCOFLER, Presiding Justice.

Appellant was convicted of murder and sentenced to death for killing James Edward Giddens, a police officer, on February 11, 1976. The trial began January 9, 1978, and concluded January 28, 1978.

The jury was authorized to find the following facts: Appellant and two other men,[1] committed an armed robbery of a convenience food store in Adel, Georgia; the police were informed of the robbery and a radio alert to be on the lookout for the perpetrators was broadcast; the victim, the Chief of Police of Ray City, Georgia, located fifteen miles east of Adel, stopped the auto in which the three men were traveling; before approaching the auto he reported by radio its description and tag number; when he tried to arrest the men he was seized, disarmed and abducted; thereafter he was taken to a remote area near Banks Lake in the adjoining Lanier County; the victim attempted to flee and ran into some shallow waters whereupon he was shot by one of appellant's companions; thereafter appellant waded into the water and delivered a coup de grace by shooting the victim in the head several times. Appellant testified at the trial. He admitted the robbery, the abduction of the victim, and that he waded into the water and shot the victim. He stated he thought the victim was dead when he shot him.

The jury imposed a death sentence upon finding the following aggravating circumstances: (1) The murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind, or an aggravated battery to the victim; (2) the murder was committed against a peace officer in the performance of his official duties; and (3) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of himself or another.

Appellant was indicted in Lanier County for malice

---

[1]See *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Fleming v. State,* 243 Ga. 120 (1979).

murder on July 15, 1976, and September 13, 1976. Both of these indictments were quashed because of the disproportionate representation of women on the grand jury. Thereafter the appellant was indicted again for malice murder on August 15, 1977. He was tried on this later indictment. A motion for change of venue from Lanier County was granted on October 26, 1977. The trial was held approximately eighty miles distant in Bleckley County.

Three judges disqualified to preside in the case and one judge withdrew. A judge from the Atlanta circuit was designated and presided in the case.

Other than challenges to the qualification of judges there were 113 written pre-trial motions. However, on some issues as many as four identical motions were filed apparently because the original indictments were quashed and the venue changed. Actually there were fifty pre-trial issues raised in writing. All of these were ruled upon by the presiding judge. Twelve were decided for appellant entirely or in part. Fifteen days of hearings on these pre-trial issues were held during May, June and December, 1977. By order, all motions filed prior to reindictment were extended and deemed viable, and all rulings applied to duplicate motions.

The first twelve days of the trial were used to examine 129 jurors on voir dire and to select the trial jury. The record and transcripts consist of more than 12,000 pages. This appeal together with the record, transcripts of the hearings on motions to suppress, the voir dire and trial were filed in this court on August 1, 1978. By order of this court additional transcripts of hearings on other pre-trial motions, except those prior to the designation of the presiding judge, were filed on November 17, 1978. Also by this court's order appellant's enumerations of error and brief were filed on December 15, 1978. Oral argument was heard January 16, 1979.

1. Appellant's representation that the prosecutor prejudiced the whole of "south" Georgia against him exaggerates the notoriety of his crime. The crime is an uncomplicated murder of a police officer to which appellant testified at the trial. The proceedings were protracted and are voluminous because of the pre-trial

motions. The trial was not held until nearly two years after the crime and the venue was changed. As will be discussed later, the recognized classes of persons in the community were properly represented in the jury pool. The jurors were examined extensively on voir dire and it appears the trial court was liberal in striking jurors for cause upon appellant's challenge. Appellant used only 18 of his 20 peremptory strikes. A complete review of the proceedings shows that appellant received a fair and impartial trial.

In our opinion the hearings held prior to the designation of the presiding judge are unnecessary and would not, as appellant states, explain how the prosecutor prejudiced "south" Georgia. These hearings pertained principally to the qualifications of judges who withdrew. They were held in Lanier County prior to the quashing of the original indictments and change of venue. The presiding judge ruled on all of appellant's motions other than motions to disqualify judges.

We find that appellant's counsel has had sufficient time to prepare this appeal. He had the record and transcripts of the hearings on motions to suppress, voir dire and trial consisting of 7,600 pages four and one-half months before his written brief was due and five and one-half months before oral argument. He had the additional transcripts on pre-trial motions consisting of 4,800 pages nearly one month before brief and two months before argument. The .additional transcripts contain voluminous colloquy and oral argument. The trial itself, excepting the voir dire, consists of only 1,151 pages. The time allowed appellant to prepare his brief and oral argument was more than provided by this court's rules and in our opinion was adequate. This is evidenced by the comprehensive errors, briefs, and oral arguments which have been presented and which we find explore completely and in depth any possible denial of appellant's rights or commission of other errors. We do not believe appellant can complain of the professional competence of his attorneys despite the alleged lack of time to prepare this appeal. See Davis v. State, 242 Ga. 901(1979).

2. The constitutionality of the Georgia statute authorizing peremptory jury challenges has not been

attacked. Code § 59-805. So long as the statute is valid the district attorney may use such challenges in his discretion. "In the very nature of such a challenge no reason need be shown or assigned for the exercise of the right." *Hobbs v. State,* 229 Ga. 556 (6) (192 SE2d 903) (1972); *Jordan v. State,* 235 Ga. 732 (1) (222 SE2d 23) (1976).

3. We hold that the Georgia statute authorizing the trial judge to excuse a juror who is a housewife with children fourteen years of age or under does not violate the Sixth and Fourteenth Amendments to the United States Constitution. Code Ann. § 59-112 (b). "We recognize that a State may have an important interest in assuring that those members of the family responsible for the care of children are available to do so. An exemption appropriately tailored to this interest would, we think, survive a fair cross-section challenge." Duren v. Missouri, — U. S. — (99 SC 664, 671) (1979). Furthermore, the jury consisted of a representative cross section of the community. The challenge was made to the traverse jury. In Bleckley County, to which venue was moved and where appellant was tried, the population eligible for jury duty consists of 18 percent blacks and 51 percent women. The jury list included 19 percent blacks and 49 percent women. The differences are not significant. *Barrow v. State,* 239 Ga. 162, 168 (236 SE2d 257) (1977).

4. There was no error in excluding jurors who stated they would not impose the death penalty under any circumstances. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770) (1968).

5. Code Ann. § 59-718.1 provides, "At any time during the trial of a civil or criminal case, either before or during jury deliberation, the judge may, in his discretion, allow the jury to be separated and the members thereof dispersed under appropriate instructions, *except in capital cases.*" (Emphasis supplied.) In our opinion the statute requires the jurors to be sequestered in capital cases after their selection to hear the case. Accordingly the trial judge did not err in permitting prospective jurors to disperse under proper instructions during the voir dire and before being selected and empaneled to hear the case. The jurors were sequestered from their selection to hear

the case until verdict.

6. We find no systematic exclusion of blacks and women from the traverse jury. The disparity between the percentages of such classes in the community and in the jury pool are not significant. See Division 3. Young adults between the ages of 18 to 30 years of age are not a cognizable class. *Barrow v. State,* supra, at p. 164.

7. We find no reversible error in appellant's assertion that the prosecutors "not only conducted themselves in an unprofessional manner but deprived the appellant of a constitutional process to determine if he lives or dies." The original indictments were quashed and appellant reindicted. A change of venue was granted removing the trial to a jurisdiction approximately 80 miles away. A trial judge from Atlanta, approximately another 100 miles distant, presided. Twelve of appellant's fifty written pretrial motions were granted in whole or in part including, in addition to quashing of indictments and change of venue, motions to disclose impeaching information, funds to hire a forensic pathologist and expert witnesses to analyze jury compositions, and to disclose surveillance. As stated by the trial court: "Defendant's notices to produce have been required [to] be complied with by the Court, requiring the production by the prosecutor of any and all tangible evidence, photographs and documentary evidence. Motions to Suppress have been extensively heard resulting in the disclosure to the defense of virtually every aspect of testimony to be presented by the prosecution, and thorough and sifting cross examination by the defense attorney has been conducted of these prosecution witnesses. Disclosure of tangible evidence and scientific evidence has been required by the Court from the prosecution, and defense attorneys have been allowed extensive opportunity to inspect, examine, copy and review all items of evidence and all reports thereon. The defense attorney has received, at the direction of this Court the entire transcript of the earlier trial of a co-defendant, Son H. Fleming. The State has been required to disclose to the attorney any and all information which might assist the defense in its case,

including exculpatory material and information concerning any potential benefit to any witness in exchange for any testimony." In addition, the trial court conducted a nine-hour in-camera inspection of the prosecutor's files to insure that defense counsel had been furnished all favorable or exculpatory information. Jury selection consumed twelve days. From a review of the record and transcripts, it is our opinion the appellant received a fair and impartial trial. The case was prosecuted and defended vigorously. If appellant is critical of some conduct of the prosecutor, the state is equally critical of some conduct of appellant's counsel. However, from our review we conclude that there was no conduct which produced a wrongful conviction or detracted from the fairness of appellant's trial. The book burning incident occurred in Lanier County nearly a year prior to trial in Bleckley County. The alleged physical assault did not occur during the trial and may be better described as an angry confrontation since there was no actual striking.

8. Whether the Governor has power to rescind his assignment of an out-of-circuit judge to hear the case is moot. Appellant had moved to disqualify the judge and cannot now complain. Furthermore, the record shows the judge withdrew voluntarily, albeit after request by the Governor. The judge who presided in the case was fully qualified.

9. Enumeration of error 8 is without merit. The presiding judge was qualified and his appointment proper.

10. Georgia's death penalty statute is constitutional. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909) (1976). Appellant's allegation that its administration is unconstitutional because of a pattern and practice of prosecuting authorities, courts, juries and governors to discriminate on grounds of sex and poverty is unsupported.

11. The trial judge did not err in refusing to allow an out-of-state attorney, not a member of the Georgia bar, to represent appellant. Leis v. Flynt, — U. S. — (99 SC 698) (1979). We note, however, that this attorney was permitted to sit at counsel table and assist during the trial, and

that appellant was represented by four other competent attorneys.

In Division 7 we related the information released to appellant's counsel and find no error in the trial court's denial of appellant's motion to provide him with investigators and certain expert witnesses.

12. The trial court's order that only one attorney argue for the state and one attorney for appellant did not violate appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. See also Code Ann. § 24-3320.

13. The denial of appellant's motion to change the venue from Bleckley County was not error. In our opinion it is unnecessary to recite the evidence. One of appellant's attorneys summed it up when he conceded that they had not given the court "A hell of a lot of stuff" to support a change of venue. *Street v. State,* 237 Ga. 307, 308 (1) (227 SE2d 750) (1976).

14. We find no error in the trial court's denial of motions to suppress appellant's pre-trial inculpatory statements, seizure of evidence, and eyewitness identification. Appellant was advised of his rights under Miranda and waived them. The day following his arrest he gave police a statement of his participation in the crime. There was no evidence of any threats, intimidations, promises or inducements. The guns, money in a paper sack, and a walking cane were seized from the automobile in which appellant had been riding at the time of his arrest, upon the consent of a co-conspirator who was the custodian of the automobile. Rakas v. Illinois, — U. S. — (99 SC 421) (1978). Appellant was lawfully arrested and a search of his person was authorized. The eyewitness identification by the armed robbery victim was not tainted. The evidence shows the witness made the identification about three hours after the crime and that he had viewed the appellant during the armed robbery for several minutes face to face in a well-lighted store.

15. We find no error in the victim's widow identifying the photographs of her husband and his bloody shirt.

16. There was no error in the trial judge's refusal to

answer the jury's question as to how long appellant would serve if sentenced to life. *Thomas v. State,* 240 Ga. 393, 401 (6) (242 SE2d 1) (1975).

17. We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor and that the sentence is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. Code Ann. § 27-2537. In reviewing the sentence we have considered the cases appealed to this court since January 1, 1970, in which a death or a life sentence was imposed and we find the following similar cases listed in the appendix support affirmance of the death penalty. The evidence supports the aggravating circumstances. The verdict is factually substantiated.

We have also reviewed the trial court's charge on the sentence and find it complies with *Fleming v. State,* 240 Ga. 142, 146 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327, 334 (240 SE2d 833) (1977).

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 16, 1979 — DECIDED FEBRUARY 6, 1979 — REHEARING DENIED FEBRUARY 27, 1979.

*Millard C. Farmer, Jr.,* for appellant.
*Vickers Neugent, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.

APPENDIX.

*Johnson v. State,* 226 Ga. 378 (174 SE2d 902) (1970); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Fleming v. State,* 243 Ga. 120 (1979).