## 36144. FLEMING v. THE STATE.

UNDERCOFLER, Chief Justice.

We today decide under this court's supervisory role over the Bar of this State and under our mandate to review death sentences that the same attorney shall not represent co-defendants in cases in which the death penalty is sought. Because of the difficulty in assessing possible conflicts of interests, we believe that this rule will assure that each defendant receives the effective assistance of counsel guaranteed him by the Sixth Amendment.

Son H. Fleming, his nephew, Larry Donnell Fleming, and Henry Willis, III, are accused of committing armed robbery in Cook County, of kidnapping Chief of Police James Edward Giddens in Berrien County, and of murdering him in Lanier County on February 11, 1976. Son Fleming and Henry Willis have both been separately tried, convicted and sentenced to death. *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); 243 Ga. 120 (252 SE2d 609) (1979); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979).

Son Fleming was represented by both retained and appointed counsel. Willis was, and still is, represented by his retained attorney, Millard C. Farmer, Jr. Larry Fleming has also retained Farmer to represent him. The State made a motion in the trial court to disqualify Farmer from representing Fleming because of a conflict of interest between Willis and Fleming. Willis has several times, including in his testimony at his own trial, claimed, albeit inconsistently, that Larry Fleming also shot Chief Giddens. At other times he has admitted doing the shooting himself. Fleming has consistently denied shooting the policeman. The record, therefore, reveals an obvious[1] conflict of interest between these two co-defendants.

The position of the Supreme Court of the United States on such conflicts of interest is clear: "[W]henever a trial court improperly requires joint representation *over timely [defense] objection* reversal is automatic . . . 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice

---

[1]One need only contemplate the spectacle of Willis being cross examined by his own attorney on these inconsistent statements or Willis being called by his own attorney as a witness to be convinced that a conflict of interest exists.

calculations as to the amount of prejudice arising from its denial.' " (Emphasis supplied.) Holloway v. Arkansas, 435 U. S. 475, 488 (98 SC 1173, 55 LE2d 426) (1978). However, in Cuyler v. Sullivan, 48 USLW 4517, 4521 (1980), that same Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant *who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (Emphasis supplied.) Compare Glasser v. United States, 315 U. S. 60 (62 SC 457, 86 LE 680) (1942), and Dukes v. Warden, 406 U. S. 250 (92 SC 1551, 32 LE2d 45) (1972). But, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."[2] Cuyler v. Sullivan, 48 USLW at p. 4521. Here, however, where there is an obvious conflict, the State made a motion to disqualify Fleming's attorney prior to the trial in order to prevent built-in reversible error.[3] The trial court disqualified Farmer.

Fleming argued that this disqualification deprived him of the counsel of his choice and attempted to waive the disqualification in the trial court. The trial court refused to accept Fleming's waiver. Fleming appeals. We affirm.

1. We reach first Fleming's contention that he desires to waive any possible conflict of interest so that Farmer may continue to represent him. In order to waive a right as fundamental as effective counsel, the trial court must, on the record, determine that the waiver is knowing, intelligent and voluntary. Glasser v. United States, supra; Johnson v. Zerbst, 304 U. S. 458 (58 SC 1019, 82 LE 1461) (1938). To meet this test, the trial court must be satisfied that the defendant is aware of the possibility of conflicts and the dangerous consequences which may result. E.g.: United States v. Garcia, 517 F2d 272 (5th Cir. 1975). The numerous United States Circuit Courts of Appeals which have addressed the issue point out the importance of personal questioning, on the record, by the trial court. E.g.: United States v. Carrigan, 543 F2d 1053 (2nd Cir. 1976); United States v. Gaines, 529 F2d 1038 (7th Cir. 1976); United States v. Garcia, supra; United States v. Foster, 469 F2d 1 (1st Cir. 1972); Campbell v. United States, 352 F2d 359 (DC Cir. 1965).

Yet this procedure is not itself without problems. The court is unaware of potential areas of conflict and can only allude to the

---

[2] *Munford v. Seay,* 241 Ga. 223 (244 SE2d 857) (1978), insofar as it appears to require a showing of prejudice, has thus been overruled by this decision.

[3] That the State, be it through the judge or prosecutor, has a responsibility under the Fourteenth Amendment to see that the defendant receives a fair trial is beyond dispute. Fitzgerald v. Estelle, 505 F2d 1334 (5th Cir. 1975).

possibilities in the most general terms. Beyond that, the court cannot be sure the defendant is sophisticated enough to understand. Indeed, in Glasser v. United States, supra, the United States Supreme Court pointed out that Glasser, who was himself an Assistant United States Attorney, had not waived his right to independent counsel.

Other problems are also apparent. Here, for example, the very attorney whose disqualification was at issue instructed his client not to answer any of the trial court's questions, even of the most innocuous sort. We thus find this procedure ineffective[4] and fraught with its own constitutional infirmities and refuse to adopt a similar procedure where the death penalty is involved.[5] See generally, Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney,* 62 Minn. L. Rev. 119 (1978).

We note further that there is no record of any waiver by Willis. Though already convicted, Willis is still represented by Farmer. It is obvious that the necessary constitutional waiver must be obtained from all the parties whose interests are at stake. This failing alone is reason enough to find that Fleming has not satisfactorily overcome the constitutionally mandated disqualification of his attorney. We, however, rest today's decision on another ground.

This court has the inherent power to govern the pratice of law in this State. *Huber v. State,* 234 Ga. 357 (216 SE2d 73) (1975); *Fortson v. Weeks,* 232 Ga. 472 (208 SE2d 68) (1974); *Sams v. Olah,* 225 Ga. 497 (169 SE2d 790) (1969); *Wallace v. Wallace,* 225 Ga. 102 (166 SE2d 718) (1969). This court also has been mandated to review the administration of the death penalty. Code Ann. § 27-2537. The Code of Professional Responsibility of the Rules and Regulations of the State Bar of Georgia, created and established by order of this court in 1963, provides, under Canon 5, that a "lawyer should exercise independent professional judgment on behalf of a client." Code of Professional Responsibility, Rule 3-105. Under Directory Rule 5-105, an attorney must refuse to accept or continue employment if his independent judgment may be adversely affected by his representation of another client.[6] See also Code Ann. § 9-701; Code

---

[4]New Jersey Federal District Court Judge Lacey characterized this procedure as an "ineffective charade" and a "futile exercise." United States v. Garafola, 428 FSupp. 620, 623 (D. N. J. 1977).

[5]We leave for another day the question of multiple representation where the death penalty is not sought by the State.

[6]We note here also that the rules of ethics require waivers from all affected parties. DR 5-105(c).

of Professional Responsibility, Rules 3-104, 3-107; ABA Code of Professional Responsibility, § DR 5-105; ABA Defense Standards § 3.5(b).

In addition, we have noted with interest the case of United States v. Dolan, 570 F2d 1177 (3d Cir. 1978), where the Court of Appeals for the Third Circuit, affirmed the disqualification of co-defendants' attorney on the trial court's own motion. Because the trial court was not able to inform the defendant of the possible consequences of multiple representation, it was not satisfied that it could accept a constitutionally sufficient waiver. In affirming, the Court of Appeals held that "when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from further attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver. Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation." United States v. Dolan, supra, p. 1184. We today adopt this as a mandatory rule in death penalty cases under our supervisory powers. We therefore hold that, where the State seeks the death penalty against any one defendant in a criminal transaction, he and his co-defendants must be provided with separate and independent[7] counsel. Such a rule is especially necessary where the death penalty is sought, because in these cases even a slight conflict, irrelevant to guilt or innocence, may be important in the sentencing phase. Green v. Georgia, 422 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979); Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). Any attorney representing multiple defendants in such a case is subject to disciplinary proceedings if he refuses to withdraw such representation.

Faced with an actual conflict of interests in a death penalty situation, the trial court here refused to accept a waiver, and disqualified Fleming's attorney. We affirm for the reasons stated

---

[7]See DR 5-105 (d).

above.

2. Fleming also contends that the disqualification of his retained attorney violated his right to the attorney of his choice. That right, however, is not unqualified. A defendant has the right to represent himself. Faretta v. California, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975). However, he may not be represented by a non-attorney, e.g. United States v. Cooper, 493 F2d 473 (5th Cir. 1974), Canon 3, Code of Professional Rules and Regulations of the State Bar of Georgia, or an attorney who has not been admitted to the Bar of this State. Rules of the State Bar of Georgia, 1-203.

As was said in United States v. Dolan, supra, at p. 1183, "In United States v. Dardi, 330 F2d 316 (2d Cir.), cert. denied, 379 U. S. 845, 85 SC 50, 13 LE2d 50 (1965), the Second Circuit held that the right to be represented by a particular attorney is not absolute when it would unduly delay and require the adjournment of a trial because of counsel's illness. Accord, Maynard v. Meachum, 545 F2d 273 (1st Cir. 1976). Under such circumstances, temporary assignment of a co-defendant's counsel when there appears to be no conflict of interest is not, in itself, a denial of effective assistance of counsel. United States v. Dardi, supra, at 335. Moreover, an indigent defendant does not have an absolute right to the assignment of counsel of his or her own choice; rather, the appointment is left to the sound discretion of the court. E. g. United States v. Smith, 464 F2d 194, 197 (10th Cir. 1972). If the right to particular counsel is not absolute for an indigent or when it will unduly delay or subvert judicial proceedings, then certainly the sixth amendment should not be interpreted to allow a defendant to sanction a lawyer's breach of ethical duties, when such duties serve the public interest as well as the client's. See Geer, Conflict of Interests, at 158-60." We, therefore, hold that whatever Sixth Amendment right to chosen counsel Fleming may have, if any, has not been impaired by the disqualification of Farmer.

3. Fleming's motion to transfer this appeal to the Court of Appeals is denied since his claims raise constitutional issues appropriate for decision by this court.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially, and Jordan, P. J., who dissents.*

ARGUED APRIL 15, 1980 — DECIDED
JUNE 9, 1980 —
REHEARING DENIED JULY 1, 1980.

*Millard C. Farmer,* for appellant.

*Vickers Neugent, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

BOWLES, Justice, concurring.

In addition to the other reasons stated by the majority for establishing the rule today pronounced, I add this comment. No two defendants share equal responsibility for a crime. Usually one is more culpable than the other or for any number of reasons has a greater degree of responsibility for what occurred. One may also be more entitled to leniency based on such factors as age, intelligence, motive, background, previous conduct or record, etc. Common counsel eliminates any practical possibility of plea bargaining. In these cases life itself is at stake and the built-in conflict which arises from representing co-defendants cannot be resolved by waiver.

HILL, Justice, concurring specially.

The majority is, in my view, correct in affirming the trial court's disqualification of Millard Farmer from representing Larry Fleming.

First, there is a clear conflict of interest. Mr. Farmer's other client, Henry Willis, testified at his own trial that Son Fleming shot Police Chief Giddens first, that he (Willis) shot Chief Giddens next and that Larry Fleming shot him last.[1] In at least one statement given to police, Willis stated that Larry Fleming did not shoot Chief Giddens. If Larry Fleming was not one of the actual perpetrators of the murder, that fact is material to his defense against the death penalty. *Collins v. State,* 243 Ga. 291, 299-300 (253 SE2d 729) (1979); Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978) (opinion of Blackmun, J.). Having testified at his own trial, Willis may be called as a witness for the state or the defense at the trial of Larry Fleming. If Willis is called as a witness, by either the state or Larry Fleming, Willis will need advice from his counsel as to his rights under the fifth amendment. If Larry Fleming is the one who calls Willis as a witness, Larry Fleming's lawyer will not be able to advise Willis freely regarding his fifth amendment rights. Moreover, if Larry Fleming calls Willis and Willis recants his trial testimony as to Larry Fleming's shooting Chief Giddens, Willis will be giving contradictory testimony and thereby admitting perjury under examination by his own attorney. If the state calls Willis and Willis restates his trial testimony, then his attorney should

---

[1] At his trial, Son Fleming testified in his own behalf but denied being present at the scene of the murder. *Fleming v. State,* 240 Ga. 142, 143-144 (240 SE2d 37) (1977).

undertake to impeach him by cross examining him as to his contradictory statement to police. Thus, there is a clear conflict of interest between Larry Fleming and Henry Willis, in the decision of whether to call Willis, in the decision whether Willis should waive his fifth amendment rights, and in the decision to examine or cross examine Willis. One lawyer cannot represent both Fleming and Willis in making these decisions.

Second, the authorities are in agreement that in order for a defendant to waive his counsel's conflict of interest, his waiver must be knowing, voluntary and intelligent, and that in order to be sure that his waiver meets this standard, the trial judge must question the defendant personally (see authorities cited by the majority and in the dissenting opinion of Jordan, P. J.). Here the trial court's effort to question Larry Fleming personally was frustrated by his attorney's instructions to Fleming to invoke his right to remain silent. A defendant cannot claim the right or privilege of waiving his counsel's conflict of interest and also refuse to participate in the process by which such waiver is made effective.

Moreover, when he appeared at the hearing on the motion to disqualify, Larry Fleming did not make any showing that Henry Willis had agreed to waive the conflict of interest.[2] Such a waiver by Willis, in order to be effective, would have to be tested by the trial judge personally questioning Willis. Here, there was no tender of waiver by Willis so as to require the trial judge to question Willis. Hence the majority properly has affirmed the trial judge's disqualification of Farmer.

However, the majority goes further and adopts a rule which precludes waiver in death penalty cases.[3] The majority feels that this "blanket rule" will avoid the problems which would arise where two or more defendants seek to waive a conflict of interest. I respectfully disagree. In the future, a defendant who seeks to waive a conflict of interest will be foreclosed by the rule adopted by the majority from a hearing on waiver. Such a defendant may be able to claim, after conviction, that the rule adopted by the majority violated his right to counsel of his choice and that absent the majority's rule, he would have waived the conflict, would have

---

[2]Millard Farmer represented Willis at the trial and on appeal in *Willis v. State*, 243 Ga. 185 (253 SE2d 70) (1979). Whether or not Farmer continues to represent Willis today actually is immaterial. Only Willis can agree that Farmer may use what he learned from Willis in confidence during that representation in defending Larry Fleming.

[3]The rule adopted by the majority is supported by reasons applicable in many, but not all, cases. An attorney representing two defendants in a death penalty case

answered the judge's questions, and would have shown that his co-defendant also would have waived the conflict and answered the judge's questions. A post-conviction determination of whether there would have been a pretrial waiver raises more problems, in my view, than are solved by the rule adopted by the majority.

I would prefer to adopt a rule to the effect that where the state seeks the death penalty against any one defendant in a criminal transaction, he and his co-defendants must be provided with separate and independent counsel, *unless and until* those defendants declare in advance of trial, on the transcript or in writing, (1) that they want to be represented by common counsel, (2) that they are aware of their rights to effective representation by separate counsel free of conflict, who may cooperate or not as they see fit in the best interest of their respective clients, (3) that they are aware of the details of any conflict of interest which exists (or aware of the possibility of conflicts even if none is apparent) and understand the dangerous consequences which may result, (4) that they knowingly and voluntarily waive the conflict or possibility of conflict, (5) and that they will personally answer questions put to them by the trial judge. Only after such showing has been made in writing signed by the defendants or made orally by them or in their behalfs, would the trial judge be required to hold a hearing on the question of waiver of conflict of interest.

Although the majority do not adopt the exception to the rule which I propose, defendants who hereafter seek to attack the rule

---

cannot recommend to one of them that he or she testify for the state in the hope of leniency, see *Potts v. State,* 241 Ga. 67 (2) (243 SE2d 510) (1978), and cannot plea bargain on behalf of one in exchange for testifying against the other, see *Coleman v. State,* 237 Ga. 84 at 85 (226 SE2d 911) (1976) (testimony of Billy Isaacs). (Larry Fleming has lost these opportunities already.)

In many if not most death penalty cases, one defendant was the actual perpetrator of the murder. That same person frequently is the dominant person in the criminal enterprise. An attorney representing the other defendant should consider whether the client should testify in his own defense, particularly in the sentencing phase of the trial. An attorney representing both defendants cannot freely recommend that one testify in his own interest and against the other.

The foregoing frequently occurring illustrations support the majority's rule. However, each of these illustrations have one thing in common. Both defendants appear to be guilty of the crime of murder. But if both are not guilty, as the law presumes at the outset, then a common defense presented by one attorney may be in order. It seems to me that the majority's rule is sustainable by reason where both codefendants are guilty but is not sustainable where both are innocent. Thus it seems to me that the majority's rule is based on a predicate contrary to the presumption of innocence and I would allow one attorney to represent co-defendants in death cases where certain conditions are met.

adopted by the majority would be well advised to make the showing which I propose, before trial, in order to lay the necessary foundation for their attack upon the rule adopted by the majority.

Under the facts of this case and for the reasons stated above, I concur in the judgment of the court.

JORDAN, Presiding Justice, dissenting.

The majority opinion holds that under the circumstances of this case a constitutionally protected right may not be intelligently and voluntarily waived. In so doing the majority has placed this Court's supervisory role over the Bar of this State above the rights of an accused. I do not understand this to be the law and disagree.

The only issue in this case is whether Larry Fleming should have the right to waive a conflict of interest resulting from his retained attorney having also represented one of his co-defendants. The majority answers this issue by the invention of a simplistic rule calculated to solve "problems" in death penalty cases. The rule sweeps a broad path and would not allow representation of co-defendants by the same attorney even where there is a common defense and no scintilla of a conflict of interest. This flies in the face of the generally accepted rule that an accused is entitled to retain the lawyer of his choice, as Larry Fleming is seeking to do in this case.

It is undisputed in this case that there is a conflict of interest between Millard Farmer's representation of both Henry Willis and Larry Fleming. However, if there is an effective waiver of this conflict by the co-defendants involved such waiver should be recognized by the courts.

Of course, the trial court should actively participate in the waiver decision. As was stated in United States v. Garcia, 517 F2d 272, 277 (5th Cir. 1975) "the [trial] court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the [trial] court as to the nature and consequences of his legal representation. *Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.* [Cit.] It is, of course, vital that the waiver be established by 'clear, unequivocal, and unambiguous language.' [Cit.] Mere assent in response to a series of questions from the bench

may in some circumstances constitute an adequate waiver, *but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.* Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment 'fundamental fairness' basis." 517 F2d at 278. (Emphasis supplied.)

The federal cases on this question clearly permit a waiver under stipulated conditions. I would give Larry Fleming the opportunity to do so. The fact that he is facing the death penalty increases the importance of this right of waiver in order that he might be represented by counsel of his choice.

I respectfully dissent.