### A95A0044. YOUNG v. THE STATE.
#### (456 SE2d 733)

ANDREWS, Judge.

Young was charged in DeKalb County with three counts of armed robbery and two counts of possession of a firearm during the commission of a crime. The indictment charged that on July 2, 1990, Young and co-indictee Raymond Burgess, using a handgun, took property from Janet Stefanowycz and from Janet Cook. The indictment also charged that on July 3, 1990, the two men used a handgun to take property from Billy McNutt.

The case was tried and Young was convicted of the armed robbery counts and acquitted of the other charges. He was sentenced to concurrent life sentences on Counts 1 and 2, and to a consecutive life sentence on Count 3. Through counsel appointed to represent Young on post-trial matters, Young filed a motion for new trial. An evidentiary hearing was held, the motion was denied, and this appeal followed.

Viewing the evidence in the light most favorable to the verdict, it was that on July 2, 1990, Cook and Stefanowycz were entering their motel room at a motel near I-85. They were approached by two men, one of whom carried a gold handgun. Cook and Stefanowycz were forced at gunpoint into the motel room. Cook was pushed onto a bed and her head was covered with a bedspread to prevent her from observing the perpetrators. Stefanowycz was pushed to the floor, which knocked her unconscious.

At one point Cook tried to get up off the bed, but she was pushed back down with a pillow over her head by one of the perpetrators. He placed the gun against the pillow and pulled back the trigger. The robbers stayed in the room for about half an hour and took jewelry and cash from the women. The perpetrators tied the victims' hands before fleeing.

Cook got a good look at Burgess during the robbery. Although neither woman was able to identify Young, both women identified the golden revolver, which was later recovered from Burgess, as similar to the one used in the robbery.

There was also evidence that on July 3, 1990, McNutt was coming out of his motel room in a motel near I-20. As he came out, a man carrying a gold revolver and a second man forced McNutt back into the room. The gunman ordered McNutt into a position where he could not see the perpetrators. When McNutt refused to comply, the gunman pistol-whipped him 12 to 15 times and threatened to blow his

face off. Continuing to hold a gun to McNutt's head, the gunman threw McNutt down and choked him, while the other gunman ransacked the room. The men took jewelry and cash from McNutt and tied him up before they fled.

McNutt saw both perpetrators, but was unable to identify Young. He identified the gold revolver and one of his watches which was recovered from Burgess upon his subsequent arrest.

As stated above, Burgess was arrested and the gold handgun and various pieces of property from the burglaries were found on him. In addition to McNutt's watch, which was found in Burgess' possession, Burgess' wife was wearing Mrs. McNutt's ring. Burgess directed the police to Young as the co-perpetrator and Young was arrested on July 20, 1990.

A DeKalb County police officer testified that on July 25, 1990, after reading Young his rights, he took two written statements from him. In one statement, Young confessed that he and Burgess robbed a man (McNutt) at the motel near I-20 with a golden gun. In the other statement, Young confessed to the robbery with a golden gun of two women (Cook and Stefanowycz) at the motel off I-85. In both statements Young related that Burgess threatened to shoot the robbery victims.

There was also evidence regarding similar transactions.[1] A taped statement which Young made to an officer of the Douglas County Sheriff's Department, after being read his *Miranda* rights, was played for the jury. In that statement, Young admitted that on July 16, 1990, he and Burgess held up two people at a motel adjacent to I-20 in Douglas County. Young stated that Burgess carried the golden gun; that he and Burgess followed the victims to their motel room; that cash was taken from the victims; and that he tied the victims' hands before leaving.

Also entered into evidence was a confession which Young made on July 22, 1990 to a Clayton County police officer. In that statement, Young admitted robbing a man at gunpoint at a motel adjacent to I-75 in Clayton County on July 9, 1990. Young stated that he and Burgess went to "commit an armed robbery" and that they selected a victim who was standing near his motel room. He stated that an attempt was made to prevent the victim from seeing them and that

---

[1] On March 24, 1993, the State filed a notice of its intent to present evidence of three similar crimes and sent the court a letter addressing the concerns of *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). The State argued that all of the similar transactions, as with the crimes for which Young was on trial, were committed at motels near an interstate highway; that they were all committed against victims who had just come in or out of a motel room; that they were all committed by two people; that in each case a golden gun was used; that in each case, attempts were made to prevent the victims from seeing the perpetrators; and that in each case attempts were made to tie up the victims.

cash was taken from him.

Young did not testify at trial.

Prior to trial, Young's attorney stipulated to the inclusion in the record of hearings held in Douglas County regarding the admissibility and voluntariness of statements Young made. In Douglas County, Young and Burgess were charged with armed robbery and murder, and faced the death penalty. The Douglas County court had conducted several days of hearings on the various statements Young gave with regard to the DeKalb, Clayton and Douglas County crimes. Included in the record before us are the transcripts of those extensive hearings which the Douglas County court conducted.

While Young's attorney stated that Young objected to the use of any similar transactions, counsel recognized that the transcript related to the court's inquiry on this subject. Young's attorney stated that the statements from that hearing had been deemed admissible in Douglas County.

1. In Young's first enumeration of error, he argues that the trial court erred in failing to give his requested robbery charge in that it was a lesser included offense of armed robbery. Citing *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994), Young contends that the fact that he was acquitted of the charges of possession of a firearm during the commission of the crimes establishes that there was evidence to support the lesser included charge of robbery.

We find no error in the trial court's failure to so charge. In *Edwards*, supra, the Supreme Court stated: "[t]he complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense*, there is no error in failing to give a charge on the lesser offense." Id. at 133. Here, both the testimonies of the victims and Young's own confessions established that the robberies were committed with Burgess' golden gun. The evidence showed the commission of the completed offenses as charged, or the commission of no offense, and there was no error in the court's failure to charge the lesser offense. See *Leaver v. State*, 211 Ga. App. 876 (2) (440 SE2d 760) (1994).

Moreover, assuming arguendo, that there was some evidence that Young committed the lesser offense, in light of the overwhelming evidence against him, "it is highly probable that the failure to give this charge did not contribute to the verdict." *Edwards*, supra at 133.

2. In Young's second enumeration of error, he contends that the trial court erred in denying his motion for new trial based on the ineffective assistance of counsel which arose from a conflict of interest. Citing *Fleming v. State*, 246 Ga. 90 (270 SE2d 185) (1980), he argues that there was a conflict of interest since attorney Michael Mears represented him both in the Douglas County case in which the death

penalty was sought, and in the instant matter in which multiple life sentences were sought. Young asserts that he rejected a plea in Douglas County of multiple life sentences, which Mears advised him to accept, but that he wound up receiving that sentence in the DeKalb County case. Young contends that Mears' sole objective, even while trying the DeKalb County case, was to avoid the death penalty in Douglas County and that because of this agenda, Mears compromised Young's interest in avoiding multiple life sentences.

Young argues that this conflict led to Mears stipulating to the admission of statements Young made in the Douglas and Clayton County actions and not requesting a *Jackson-Denno* hearing on those statements. The Douglas County court subsequently ruled that the statements were admissible.[2] Young argues that identification was an issue and that by stipulating to the statements, Young's attorney provided the State with the additional evidence it needed to convict him.

At the hearing on the motion for new trial, Mears testified that the theory of the defense was to distance Young from Burgess. Mears testified that the defense tried to show Burgess as the gunman and the violent perpetrator and Young as the passive accomplice who showed restraint during the crimes and contrition after his arrest. Mears testified that Young's statements showed remorse and supported the defense theory that Burgess was the violent perpetrator and that Young was cooperative with police. Moreover, he stated that there was ample evidence that the statements were freely and voluntarily made. Mears testified that the negative aspect of this approach was that the statements furnished the primary evidence regarding the similar transactions. Nevertheless, Mears made the conscious strategic decision not to fight the admission of the statements, since they were the most favorable option in a bad situation and since the evidence probably would be admissible. Mears stated that Young's "statements in a vacuum were fairly favorable to the strategy that we were trying to carry forward, and that is that he was not the prime mover in these robberies."

Mears stated that he was also mindful that if Young was convicted in DeKalb County, Douglas County would reevaluate its decision to seek the death penalty against him. Mears conceded that his overriding goal was to save Young from the death penalty.

We find no merit to Young's argument that Mears was ineffective because of a conflict of interest. Preliminarily we note that Mears did not stipulate to the admissibility of the statements themselves; he stipulated to the court's consideration of the transcript of the Douglas

---

[2] It is not clear from the record when the Douglas County court ruled on the admissibility of the statements.

County hearings. Though Mears did not object to two of the statements, he continually objected to the admission of the statements Young made to a DeKalb County detective. Mears also made a motion to suppress evidence regarding similar transactions, which motion was granted as to the murder charge in Douglas County. Furthermore, although he did not pursue it, Mears also filed a motion to suppress based on *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

There was no objection made at trial to this alleged conflict of interest. "When conflict of interest is raised in a post-conviction proceeding, the petitioner must show actual conflict which caused his counsel's performance to be adversely affected. *Jones* [*v. Ivory*, 255 Ga. 20 (334 SE2d 666) (1985)], citing *Cuyler v. Sullivan*, 446 U. S. 335 (100 SC 1708, 64 LE2d 333) (1980)." *Wharton v. Thomas*, 256 Ga. 76, 77 (343 SE2d 694) (1986).

Here, there has been no showing that there was an actual conflict. At the motion for new trial hearing, Mears testified that he made strategic decisions that he considered best in the DeKalb County action. Despite Mears' concern about the Douglas County action, he defended the DeKalb action in an appropriate manner.

Moreover, there is no evidence that the alleged conflict adversely affected Mears' performance. In fact, Young was acquitted of the two charges of possession of a firearm during the commission of a crime.

We find no error in the denial of the motion for new trial.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 30, 1995.

*Melissa M. Nelson, Alden W. Snead,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Thomas S. Clegg, Assistant District Attorneys,* for appellee.